IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY FORCE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 09 C 4645 |
| CITY OF CHICAGO, EDDIE GARRETT, JOHN WILLIAMSON, LEO CROTTY, ANNA MCLEAN, and RONALD CARLSON, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Timothy Force has sued the City of Chicago and Chicago police officers Eddie Garrett, John Williamson, Leo Crotty, Anna McLean, and Ronald Carlson. He asserts claims against the officers for false arrest, excessive force, and malicious prosecution, and against the City under the doctrine of respondeat superior on the state law claim, indemnification of the officers under Illinois statute, and *Monell* liability under 42 U.S.C. § 1983. The Court severed the *Monell* claim. Defendants have moved for summary judgment on all other claims except the excessive force claim (and the indemnification claim to the extent it concerns the excessive force claim). For the reasons stated below, the Court grants the motion in part and denies it in part.

### Facts

On the evening of November 8, 2008, Julio Villalta, an employee at the Circuit City electronics store at 1030 W. North Avenue in Chicago, saw Force enter the store

and walk to the compact disc (CD) department. Villalta has testified that he saw Force tear the wrapper off at least one CD and place the CD in his coat pocket. Villalta reported this to a store manager, Jay Nelson. Nelson monitored Force for a few minutes and then directed Villalta to assist Force with purchasing a stack of DVDs that Force had picked out. In the meantime, Nelson called the police. Force denies placing a Circuit City CD in his pocket. He claims that the CD in his pocket was one that belonged to his wife that he had with him before he entered the store. Force also denies unwrapping a CD but admits he tore the wrapper off one DVD so he could read its release date.

Force attempted to purchase the stack of DVDs using what turned out to be his wife's credit card. The cashier told him that he was not authorized to use the card. He says he asked the cashier to call his home (which was across the street) and that his wife would okay his use of the card. Force also says he told Nelson that he had unwrapped a DVD, and he says he offered to pay for it. He says that Nelson replied, "Okay, that's fine."

Meanwhile, officers Williamson and Garrett were dispatched to the Circuit City store to respond to a "disturbance" there. Nelson told Williamson, the first officer to arrive, that Force had been seen tearing the wrappers off CDs and putting a CD in his coat pocket. There is evidence that Nelson told Williamson that he was willing to let Force go if Force returned or paid for the CD.

Williamson approached Force at the counter. Force cannot recall the particulars of their conversation. Williamson testified that he asked to search Force for the CD and that Force refused. Force denies this. There is evidence that Williamson told Force

that the store manager would let him go if he returned or paid for the CD. Williamson did not tell Force that he was under arrest and did not take him into custody.

Garrett arrived at the store while Williamson and Force were talking. Nelson did not speak to Garrett but rather simply pointed at Force. Garrett then approached Force from behind. According to Force, a man behind him (who turned out to be Garrett) grabbed and bear-hugged him without warning and without advising that he was a police officer. Force says he did nothing to provoke or justify this. Garrett claims he saw Force strike Williamson. Williamson claims that Force grabbed his hand and pushed it into his chest and that Garrett then grabbed Force from behind and tried to put Force onto the counter. There are inconsistencies between the accounts of Garrett and Williamson.

Nelson, Villalta, and Garrett all testified that Force then attempted to jump over the counter. Force denies this. Nelson claims Force used his hand to push off of Williamson while trying to jump over the counter. Force denies making contact with Williamson, unless it was the result of being swung onto the counter by Garrett.

Williamson and Garrett then took Force to the ground and attempted to handcuff him. After they had handcuffed Force, Williamson announced that Force was under arrest, and the officers brought Force back to his feet. Nelson and Villalta stated that they saw Force struggling with the officers and screaming profanity at them while they tried to arrest him. Garrett testified that Force stomped on his feet numerous times during or after the arrest. Force denies struggling, using profanity, or stomping on Garrett's feet. Force does not deny screaming, and he admits to squirming "maybe a little bit" during the arrest.

3

After the arrest, Williamson searched Force and recovered a CD and a CD jewel case. Nelson looked up the CD and confirmed that it belonged to Circuit City and had not been purchased. No charge of theft or attempted theft was ever made against Force, however – perhaps because he had not taken or attempted to take the CD (or any other Circuit City property) from the store, or perhaps because it was unclear whether the CD might have already belonged to Force as he claimed.

Meanwhile, officers Carlson and McLean arrived at the store in response to a dispatch. They took over the custody of Force and transported him to the police station. At the police station, both Williamson and Garrett signed complaints of battery against Force. Williamson alleged that Force struck him in the chest, and Garrett alleged that Force stomped on his feet. Garrett also signed a complaint against Force for resisting arrest. Villalta testified that he could not recall signing a criminal complaint. The record includes, however, a complaint against Force, purportedly signed by Villalta, for criminal damage to property. Neither Carlson nor McLean made any complaints against Force or filled out any paperwork regarding the arrest.

Captain Crotty, the watch commander at the police station that evening, approved probable cause on all four complaints. Before doing so, Crotty reviewed the arrest report and interviewed Williamson and Garrett. Williamson and Garrett told Crotty that Force had struck Williamson and stomped on Garrett's feet. Williamson and Garrett also told Crotty that Force had ripped off the cover to a CD and placed it in his pocket. Crotty then interviewed Force and asked him about what happened at the store. Force told Crotty that he had not done anything wrong and did not understand why he had been arrested. Force also said something about his wife's credit card,

4

which Crotty did not understand.

Williamson attended the first court hearing on Force's case. At the second hearing, all four charges against Force were stricken with leave to reinstate ("SOL'd," in state court parlance) because no officer appeared. Although Williamson says he had requested notification of the second court hearing, notification was sent only to Garrett, who testified that he did not receive it because he was on vacation. Crotty had no records showing that Garrett was on vacation on the date of the second hearing. Garrett did not attempt to call the prosecutor to request reinstatement of the charges.

## Discussion

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A court may not grant summary judgment if a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court accepts as true the nonmoving party's evidence and draws all reasonable inferences in that party's favor. *Id*. at 255; *Moser v. Indiana Dept. of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005).

**1.    False arrest claim**

Force claims that Williamson, Garrett, Carlson and McLean violated his Fourth Amendment rights by seizing him without a proper legal basis. To succeed on this claim, Force must show that one or more the defendants seized him without probable cause. *See, e.g., Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009).

5

Probable cause exists when the facts and circumstances within an arresting officer's knowledge, and of which he has reasonably trustworthy information, would lead a prudent person to believe the person had committed or was committing an offense. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).  Because there is no evidence that defendants Carlson and McLean participated in Force's seizure, this Court will consider the false arrest claim only as it pertains to Williamson and Garrett.

"[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.  That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citations omitted).  Thus although it was Garrett who is claimed to have first seized Force, Garrett's subjective reason for doing so is not the question, or at least not the only question; the question is whether probable cause existed to arrest Force for *some* offense.  Of course, because the Court is considering the defendants' motion for summary judgment, the issue is whether a reasonable jury could find that probable cause was lacking.

Defendants argue the undisputed facts show there was probable cause to arrest Force on each of the charges later made against him.  The Court can dispose quickly of defendants' arguments relating to the two battery charges and the charge of resisting arrest.  Specifically, there are genuine issues of material fact on each of those.

First, there is a genuine dispute regarding whether Force made contact with Williamson:  Williamson claims Force grabbed his wrist and pushed it into his chest; Garrett claims Force struck Williamson with his fist; but Force denies touching

6

Williamson. The fact that other witnesses may corroborate the defendants' accounts to some extent does not entitle them to summary judgment; a jury could find Force credible and the others not credible. *See Chelios v. Heavener*, 520 F.3d 678, 688 (7th Cir. 2008) (dispute over whether plaintiff struck officer made summary judgment inappropriate).

Second, there is a genuine issue of fact regarding whether Force stomped on Garrett's foot, as Garrett claims. Force denies that he did so. Taking Force's account as true, as the Court must on a motion for summary judgment, the Court concludes a reasonable jury could find in Force's favor on this point.

Third, there is a genuine issue of fact regarding whether Force resisted arrest. Under Illinois law, a person is not authorized to resist an arrest even if the arrest is unlawful. *See* 720 ILCS 5/7-7; *Chelios*, 520 F.3d at 688. But the resistance must be physical to be unlawful; verbal resistance (even the profanity to which Force admits) is insufficient. *See Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003). Additionally, before a person can be claimed to have resisted arrest, he must first have had the opportunity to resist. In *Chelios*, the plaintiff claimed the defendant police officer told him he was under arrest and then immediately grabbed him and tackled him to the ground. The court concluded summary judgment in the defendant's favor was inappropriate because if a jury believed the plaintiff, he lacked the opportunity to resist. *Chelios*, 520 F.3d at 688. There are genuine fact issues regarding whether Force actually resisted arrest (he denies doing so) and whether he had an opportunity to do so after Garrett grabbed him (Force also denies this).

7

This leaves the charge of criminal damage to property.[1] Force contends there is a genuine fact issue regarding the existence of probable cause on that charge. The Court disagrees. Williamson was entitled to rely on Nelson's statement that Force had been seen tearing the label off a CD. "When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible." *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 524 (7th Cir. 2001).

There is no evidence from which a reasonable jury could find that a reasonable officer ought to have considered Nelson's report to lack credibility. The fact that Force might have claimed or thought he had a good reason to tear the label is of no consequence. And although Nelson allegedly told Williamson that he would not press charges if Force paid for or returned the CD, that does not defeat probable cause, nor could a reasonable jury find that it would suggest to a reasonable officer that Nelson's report about Force's actions lacked credibility. Rather, it suggested, at most, that Nelson was willing to let the matter go if it could be resolved quickly. Finally, the fact that Williamson did not immediately arrest Force after getting Nelson's report would not permit a reasonable jury to find that probable cause was lacking. "There is no constitutional right to be arrested at the exact moment that police acquire probable

---

[1] At the time of his seizure of Force, Garrett had no information about the claimed damage to Circuit City's property. But Force contends that Williamson – who did have information supporting probable cause on the property damage charge – jumped on him a matter of seconds after Garrett grabbed him. The few seconds that Force may have been seized only by an officer who arguably possessed no facts supporting probable cause are not constitutionally significant in the Court's view.

cause." *United States v. Turner*, 569 F.3d 637, 641 (7th Cir. 2009).

Because no reasonable jury could find that probable cause to arrest Force was lacking, defendants are entitled to summary judgment on Force's false arrest claim.

## 2. Malicious prosecution claim

Defendants argue that the existence of probable cause likewise defeats Force's state law malicious prosecution claim.

Probable cause is defined in the same way for purposes of a state law malicious prosecution claim as it is for a Fourth Amendment false arrest claim. *See Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 642, 784 N.E.2d 258, 265 (2002) (defining probable cause as "a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged"). In contrast to Force's false arrest claim, however, "probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007). Consequently, although the Court has concluded that no reasonable jury could find probable cause lacking on the charge of criminal damage to property, the existence of genuine issues of material fact regarding probable cause on the other charges precludes entry of summary judgment for Williamson, Garrett, and the City on Force's malicious prosecution claim.

The Court agrees with defendants, however, that no reasonable jury could find Crotty liable for malicious prosecution arising from his role in approving the charges that Williamson, Garrett, and Villalta had signed. Crotty was entitled to rely on what the

other officers and the representative of the victim reported. "A reasonable ground for belief of the guilt of an accused may be on information from other persons as well as on personal knowledge," and "[i]t is not necessary to verify the correctness of each item of information so obtained; it is sufficient to act with reasonable prudence and caution in so proceeding." *Turner v. City of Chicago*, 91 Ill. App. 3d 931, 935, 415 N.E.2d 481, 485 (1980). The evidence shows Crotty interviewed Williamson, Garrett and Force and reviewed the arrest report. Williamson and Garrett told Crotty that Force had struck Williamson and stomped on Garrett's feet and that Force had ripped the cover off a CD and placed the CD in his pocket. Though Force told Crotty he was innocent, he was not required to take Force's word over that of the others. No reasonable jury could find that Crotty lacked probable cause in approving the complaints.

Even were this not the case, no reasonable jury could find that Crotty acted with malice, as required to sustain a malicious prosecution claim. Malice is defined as the institution or continuation of criminal prosecution for any reason other than to bring the party to justice. *Mack v. First Sec. Bank of Chicago*, 158 Ill. App. 3d 497, 501, 511 N.E.2d 714, 717 (1987). In *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 791 N.E.2d 1221 (2003), the court concluded that Target store managers had probable cause to cause the continuation of a prosecution against the plaintiff for theft even though they had not witnessed the incident or met the plaintiff, based upon their review of a surveillance videotape and witness statements, as well as follow-up investigation. *Id.* at 74-75, 791 N.E.2d at 1220-21. The court went on to conclude that even if the evidence did not support probable cause, it refuted any inference of malice by demonstrating the managers' good faith belief that the plaintiff had engaged in theft. *Id.*

at 77, 791 N.E.2d at 1223.

The same is true in this case. No reasonable jury could find that Crotty lacked probable cause to approve the charges against Force, but even were the contrary true, no reasonable jury could find that Crotty had the requisite malice. Though Crotty did not conduct his own investigation beyond interviewing the officers and Force, under *Turner* he was not required to do so and was instead permitted to rely on what the officers told him. And even had Crotty investigated on his own, for example by interviewing other witnesses, the primary eyewitnesses from the store – Villalta and Nelson – would have corroborated the officers.

**Conclusion**

For the reasons stated above, the Court grants defendants' summary judgment motion [docket no. 75 & 78] in part and denies it in part. Summary judgment is granted in favor of the defendants on Count 1 of the complaint (the false arrest claim) and in favor of defendant Crotty on Count 3 (the malicious prosecution claim). Summary judgment is also granted in favor of the City of Chicago on the indemnification claim (Count 5) to the extent it concerns the individual claims on which defendants have prevailed and on the respondeat superior claim (Count 4) to the extent it concerns the malicious prosecution claim against Crotty. The Court otherwise denies defendants' motion. The final pretrial order is to be filed by September 10, 2010. The final pretrial conference is set for September 14, 2010 at 3:30 p.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 16, 2010